GENERAL INSURANCE COMPANY OF AMERICA, a Washington corporation, Plaintiff,

v.

TED PRICE CONSTRUCTION COMPANY, a corporation, et al., Defendants.

INTERMOUNTAIN GAS COMPANY, a corporation, Defendant and Counterclaimant,

v.

UNITED STATES of America, Defendant.

No. 3396.

United States District Court
D. Idaho, S. D.
June 17, 1959.

Peter Boyd, Gigray & Boyd, Caldwell, Idaho, for plaintiff Gen. Ins. Co. of America.

No appearance for defendant Ted Price Const. Co.

Claude Marcus, Marcus & Evans, Boise, Idaho, for defendant Intermountain Gas Co.

Ben Peterson, U. S. Atty., Boise, Idaho, for defendant United States.

FRED M. TAYLOR, District Judge.

The plaintiff, General Insurance Company of America, surety for Ted Price Construction Company, Inc., brought this

action against the Ted Price Construction Company, Inc., Fish Service and Management Corporation, Intermountain Gas Company, Inc., and several other defendants who had labor and material claims arising out of the construction of a natural gas distribution system by Ted Price Construction Company under contract with Intermountain Gas Company, Inc.

By way of counterclaim the Intermountain Gas Company filed an interpleader action and deposited in Court the sum of $11,834.08 retained by Intermountain Gas Company under the provisions of Article III of the said contract.

The only remaining parties whose interests have not been settled or disposed of in the action are the plaintiff, General Insurance Company of America, and the defendant, United States of America, each of the parties claiming to be entitled to the funds which have been deposited in court.

The matter for decision is before the Court on the agreed statement of facts set out in the Amended Pre-trial Order, filed February 20, 1959.

It appears that on December 17, 1956, the Intermountain Gas Company, Inc., acting by and through its duly authorized agent, Fish Service and Management Corporation, entered into a contract with the defendant Ted Price Construction Company for the construction of a natural gas distribution system. Said defendant completed construction of the natural gas distribution system but failed to comply with the terms of Article III of the said contract by not paying the claims for labor and materials incurred in the construction of the gas distribution system. The plaintiff, General Insurance Company of America, has been compelled to pay these labor and material claims pursuant to the provisions of a performance bond, executed on December 16, 1956, to guarantee performance and payment by the Ted Price Construction Company. The obligee of the said bond was and is Fish Service and Management Corporation.

On July 19, 1957, Fish Service and Management Corporation concluded that Ted Price Construction Company had breached the contract by failing to pay its creditors for labor and materials furnished and stopped further payments to Ted Price Construction Company, retaining the sum of $11,834.08. On January 23, 1957, the Director of Internal Revenue Service, Dallas, Texas, assessed taxes against the Ted Price Construction Company in the amount of $58,327.81. On August 22, 1957, the Internal Revenue Service, Treasury Department, served a Notice of Levy on the Intermountain Gas Company for unpaid taxes owing the Government by Ted Price Construction Company. On April 11, 1957, the Notice of Federal Tax Lien under the Internal Revenue laws was filed in Wichita County, Texas, the county of the principal place of business of the Ted Price Construction Company.

No liability arose on the said performance bond until after April of 1957.

The parties seem to agree that the sole question to be decided is whether the Ted Price Construction Company had a property right in the amount retained by the Intermountain Gas Company pursuant to the provisions of Article III of the said construction contract. If Ted Price had a property right in the said funds to which the tax lien could have attached, then the United States is entitled to prevail.

The existence of a property or contractual right is a matter of state law. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 241 F. 2d 142. It does not appear, however, that there is anything particularly unique about the Idaho law with which we are here concerned.

The contractual rights of the Ted Price Construction Company in question are those governed by the provisions of Article III of the said construction contract.

Under Article III of the construction contract, it is clear that the

Intermountain Gas Company had the right to withhold the funds in question as long as there were labor and material claims outstanding against the construction work that had not been removed or remedied by the contractor, Ted Price Construction Company. Likewise, it is clear that the Intermountain Gas Company could remove or remedy any of the outstanding labor and material claims if the contractor did not do so within ten (10) days after written notice and deduct a like amount from the compensation payable to the contractor. Under the terms of Article III of the contract, Ted Price Construction Company had no legally enforcible right to these funds until it paid the outstanding labor and material claims. Accordingly, the Court is of the opinion that no debt ever became due and payable to Ted Price Construction Company that was or could be the object of the tax lien of the United States. Since Ted Price Construction Company had no right to the money, it follows that the United States could not acquire one by its lien. Fidelity & Deposit Co. of Maryland v. New York City Housing Authority, 2 Cir., 241 F.2d 142; Aetna Cas. & Sur. Co. v. United States, 1958, 4 N.Y.2d 639, 176 N.Y.S.2d 961, 152 N.E.2d 225; Wolverine Ins. Co. v. Phillips, D.C., 165 F.Supp. 335.

Even though it may be said that Ted Price Construction Company had some contingent right to acquire the funds in question at the time the Federal tax lien attached to property of the contractor, any such right never matured into a choate interest to which the Federal tax lien could attach.

The language in Article III of the contract relied on by the United States to distinguish the present case from the cases of Aetna Cas. & Sur. Co. v. Horticultural Service, Inc., 1956, 2 A.D.2d 963, 158 N.Y.S.2d 750, modified and affirmed, Aetna Cas. & Sur. Co. v. United States, supra; and Fidelity & Deposit Co. v. New York City Housing Authority, supra, does not appear to create any right on the part of Ted Price Construction Company. This is made abundantly clear by the language used in the following paragraph of Article III where it is stated: "Any one or more payments *otherwise due* by Corporation to Contractor may be withheld in whole or in part by Corporation * * *" [emphasis added]. The Court believes the above cited cases are persuasive authority.

A number of cases have dealt with problems similar in nature to those presently before the Court and the decisions have consistently favored the surety's position. In addition to the cases heretofore cited see: United States Fidelity & Guaranty Company v. Triborough Bridge Authority, 1947, 297 N.Y. 31, 74 N.E.2d 226; United States Fidelity & Guaranty Co. v. United States, 10 Cir., 201 F.2d 118; Colusa-Glenn Production Credit Ass'n v. Phoenix Ins. Co., D.C., 145 F. Supp. 844; United States v. Crosland Construction Co., D.C., 120 F.Supp. 792, affirmed 4 Cir., 217 F.2d 275; Central Surety & Ins. Corp. v. Martin Infante Co., D.C., 164 F.Supp. 923.

Extended consideration and analysis has been given to cases similar to the one here in several of the cited cases and little purpose would be served by extensively reviewing said authorities. For a compilation of applicable authorities and legal theories see Wolverine Ins. Co. v. Phillips, supra.

The United States relies on the cases of Phoenix Indemnity Co. v. Earle, 9 Cir., 218 F.2d 645, and United States v. R. F. Ball Const. Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510. It appears that the result in the first cited case was controlled by the sovereign character of the United States and the provisions of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., neither of which factors are material in this case. In the Ball case the fund in question was admittedly property of the delinquent taxpayer and the only question was whether the interest of the claimant was perfected as against the tax lien of the United States.

A number of cases involving the same questions as is presently before the Court have been decided since the decision in the Ball Case and it did not control the

results. Aetna Cas. & Sur. Co. v. United States, supra; Wolverine Ins. Co. v. Phillips, supra; Central Surety & Ins. Corp. v. Martin Infante Co., supra.

In accordance herewith, the plaintiff, General Insurance Company of America, is entitled to the said sum heretofore deposited with the Clerk of the Court in the sum of $11,834.08.

Counsel for the plaintiff shall prepare Findings of Fact, Conclusions of Law, and a Proposed Judgment, serve copies of the same on counsel for the defendant and submit the originals to the Court.